# EXHIBIT  A

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:** SHARON GOURDINE, FIRST CITIZENS BANK,
*(AVISO AL DEMANDADO):* PUBLISHERS CLEARING HOUSE, LLC,
HEARST COMMUNICATIONS,
"Additional Parties Attachment form is attached."

| | |
|---|---|
| | **FOR COURT USE ONLY**<br>*(SOLO PARA USO DE LA CORTE)* |

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
George S. Chey

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* LOS ANGELES SUPERIOR COURT<br>STANLEY MOSK COURT HOUSE<br>111 N. Hill St, Los Angeles, CA 90012 | **CASE NUMBER:**<br>*(Número del Caso):*<br>21STCV22828 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
T.A. Chey, Esq, 1055 West 7th Street, LA, CA 90017; 424 3880058; LawFirmofConsumerJustice@activist.com

| | | | |
|---|---|---|---|
| **DATE:** 06/18/2021<br>*(Fecha)* | Clerk, by<br>*(Secretario)* | Sherri R. Carter Executive Officer / Clerk of Court<br>H. Flores-Hernandez | , Deputy<br>*(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*

  under: ☐ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
         ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
         ☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
         ☐ other *(specify):*
4. ☒ by personal delivery on *(date):*

**Page 1 of 1**

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |

7

**SUM-200(A)**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| George Chey vs. Sharon Gourdine | |

### INSTRUCTIONS FOR USE

This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

[    ] Plaintiff    [ x ] Defendant    [    ] Cross-Complainant    [    ] Cross-Defendant

GOOD HOUSEKEEPING MAGAZINE,
DOES 1-10

21STCV22828
Case 2:21-cv-06061   Document 1-1   Filed 07/27/21   Page 4 of 51   Page ID #:10
Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Robert Broadbelt

ectronically FILED by Superior Court of California, County of Los Angeles on 06/18/2021 12:58 PM Sherri R. Carter, Executive Officer/Clerk of Court, by H. Flores-Hernandez,Deputy Clerk

1  **T.A. Chey, Esq (CA State Bar License No. 172096)**
**Attorney at Law**
2  **Arco Tower**
**1055 West 7th Street**
3  **33rd Floor (Penthouse)**
**Downtown LA, CA 90017**
4  **LawFirmofConsumerJustice@activist.com; 424 388 0058**

5

6  ## SUPERIOR COURT OF THE STATE OF CALIFORNIA

7  ## FOR THE COUNTY OF LOS ANGELES

8

9  George S. Chey,                          ) Case No: __21STCV22828__
                                           )
10          **Plaintiff**                   ) **George S. Chey's COMPLAINT FOR**
                                           ) **DAMAGES**
11                                          )
                                           )
12          **vs.**                         ) 1) **FRAUD AND DECEIT**
                                           ) 2) **WRONGFUL CONVERSION /**
13                                          )    **MAIL FRAUD**
                                           ) 3) **NEGLIGENT INFLICTION OF**
14  **SHARON GOURDINE, FIRST CITIZENS**     )    **EMOTIONAL DISTRESS**
                                           ) 4) **INTENTIONAL INFLICTION OF**
15  **BANK, PUBLISHERS CLEARING**           )    **EMOTIONAL DISTRESS**
                                           ) 5) **INTENTIONAL**
16  **HOUSE, LLC, GOOD HOUSEKEEPING**       )    **MISRESPRESENTATION**
                                           ) 6) **NEGLIGENT**
17  **MAGAZINE, HEARST**                    )    **MISREPRESENTATION**
                                           ) 7) **BREACH OF IMPLIED**
18  **COMMUNICATIONS, DOES 1-100**          )    **COVENANT OF GOOD FAITH**
                                           )    **AND FAIR DEALING**
19          **DEFENDANTS**                  ) 8) **PROMISSORY FRAUD**
                                           ) 9) **BREACH OF IMPLIED**
20                                          )    **CONTRACT**
                                           ) 10) **CIVIL CONSPIRACY**
21                                          ) 11) **UNFAIR COMPETITION**
                                           ) 12) **DECLARATORY RELIEF**
22                                          ) 13) **UNJUST ENRICHMENT**
                                           ) 14) **PREMLINARY AND**
23                                          )    **PERMANENT INJUNCTION**
                                           ) 15) **VIOLATION OF THE RICO**
24                                          )    **STATUE**
                                           ) 16) **WRIT OF ATTACHMENT**
25

26

27                      ## DEMAND FOR A JURY TRIAL

28

Complaint - 1

George S. Chey, an individual, as for his Complaint against DEFENDANTS, **FIRST CITIZENS BANK, PUBLISHER'S CLEARING HOUSE, GOOD HOUSEKEEPING, SHARON GOURDINE, DOES 1-100,** inclusive demands a jury trial and alleges as follows:

## JURISDICTION AND VENUE

1. Venue is proper in this judicial district, pursuant to California Code of Civil Procedure § 395(a). Defendants resides and/or transact business in the County of Los Angeles, and are within the jurisdiction of this Court for purposes of service of process.

## PARTIES

1. Plaintiff is a resident of the County of Los Angeles, State of California. During the entire period of time at issue in this lawsuit, Plaintiff resides in Los Angeles County, in the State of California.

2. Defendants do business in the State of California County of Los Angeles.

3. Defendants conducted and operated business in Southern California during the entire ordeal they put Plaintiff through.

4. Plaintiff is informed and believes, and thereon alleges, that each of the Defendants was, at all times herein mentioned, the agent, employee, partner and/or representative of one or more of the remaining Defendants and was acting within the Plaintiff's and scope of such relationship. Plaintiff is further informed and believes that each of the Defendants herein gave consent to, ratified and authorized the acts alleged herein to each of the remaining Defendants.

5. The true names and capacities of Defendants named herein as Does 1 through 20, inclusive, whether individual, corporate, associate or otherwise are unknown to Plaintiff,

who therefore sues said Defendants by fictitious names pursuant to California Code of Civil Procedure section 474. Plaintiff will amend this Complaint to show such true names and capacities of Does 1 through 20, inclusive, when they have been determined.

## **INTRODUCTION**

1.  The sheer magnitude of innocent people being swindled and defrauded in the United States has reached epic proportions and the elderly especially are being brutally targeted, and cheated out of their hard-earned life savings by those who would take advantage of this vulnerable segment of our society.

2.  Elder abuse is most pressing problem in our country and the professional scam-artists must be shut down from existence. All of the Defendants are responsible for helping nurture an enviroment that allows scam-artists to thrive.

3.  Plaintiff is the former chairman of a NASDAQ-traded bank who was scammed by a network of scammers that recruited Defendant Sharon Gourdine.

4.  Defendant First Citizens Bank was responsible for allowing the professional scam artist to rob an elderly American citizen and cause Plaintiff a traumatic and emotionally trying ordeal.

5.  Defendants Hearst Communications ('Hearst'), Good Housekeeping, and Publisher's Clearing House helped create and foster this toxic environment against the elderly - and by mind-boggling and callous disregard for the community - enabled and emboldened this network of swindlers to victimize the elderly, senile, and those suffering from dementia and Alzheimer's disease.

6.  Defendants Hearst Communications ('Hearst'), Good Housekeeping, and Publisher's Clearing House have been previously sued by the government for defrauding many

elderly citizens. By their willful negligence, lack of proper security measures and protocols, abundant lack of adequate warning to the community, and callous disregard for the most vulnerable members of our society, they created a vacuum that would allow any enterprising criminal to easily step in, and to misrepresent themselves as an agent of Good Housekeeping or Publisher's Clearing House, and to then take advantage of people's misplaced trust relating to 'winning large monetary awards' from a reputable company.

7.  Defendant First Citizens Bank knew about these scams and even had a webpage that outlined these scams in full detail, yet permitted scam-artist Sharon Gourdine to cash the check at their bank.

8.  Defendants Hearst Communications, Good Housekeeping and Publisher's Clearing House have not taken the bold, aggressive, or even basic steps to combat these criminals for fear of ruining their brand image, and detracting from the popularity of their sweepstakes. This will be proven in Court and in front of a Honorable Judge and jury.

9.  Plaintiff will be deposing all the victims of Defendants, including the executives at Hearst Communications, Good Housekeeping, and Publisher's Clearing House to determine how much information about these rampant, wide-spread fraudulent schemes and activity was known to the Defendants, why this information was not widely made available to the public, and why appropriate action was not taken to prevent further harm to the community.

10. All of the Defendants are culpable and directly responsible for the financial, and emotional harm that happened to Plaintiff.

11. There is an urgent need by the Courts for something to be done about the bilking of the American people by those in corporate America who believe they are above the law, and by myriad hordes of clever thieves preying upon those who cannot defend themselves. This complaint seeks to address that need.

## STATEMENT OF FACTS

12. On or about November 2020, Plaintiff received an official letter from the Scammers clearly stating that said Plaintiff won the Good Housekeeping Sweepstakes.

13. The scammers then began to call elderly Plaintiff multiple times a day stating they needed Plaintiff to send a check immediately to cover the processing fees for the stated winnings.

14. This scam is taking place around America and Defendants are completely aware of this scam.

15. When Plaintiff, who is 91 years old, asked further questions, he was queried by said scammer if he was aware of Publisher's Clearing House Sweepstakes? Plaintiff was aware of said organization, and his fears or concerns were relieved by his recognition of another brand name organization.

16. Plaintiff was well aware of both Defendant's 'sweepstakes' awards, unaware that in fact he was being duped by a criminal enterprise that viciously, aggressively, and actively targets the elderly in every community in America.

17. Plaintiff finally sent in a check for $7,500 on or about September 2020, believing said check would cover the processing costs for a $750,000 award.

18. At no point did Plaintiff ever believe he was being defrauded.

19. Plaintiff was clearly a victim of the toxic and hyper aggressive 'sweepstakes' culture brought on by Heart Publishing's Good Housekeeping and Publisher's Clearing House sweepstakes – often times targeting the elderly and those with limited or fixed incomes.

20. Plaintiff, an elderly citizen again, was never aware of any fraudulent schemes going on with either Good Housekeeping or Publisher's Clearing House, again due to said Defendants willful negligence, lack of proper security measures and protocols, abundant lack of adequate warning to the community, and callous disregard for the most vulnerable members of our society.

21. The $7,500.00 check was cashed by Defendant Sharon Gourdine who willfully and purposefully cashed the check at Defendant First Citizens Bank to give the money to her criminal conspirators. She was obviously culpable, aiding and abetting these criminals, as she never returned the law firm's calls or emails.

22. This is the picture of the scammer Sharon Ghourdine of Greenville, South Carolina:



23. Plaintiff's attorney contacted the U.S. Attorneys Office in South Carolina to file a criminal report.

24. Defendant First Citizens Bank permitted and allowed Defendant Sharon Gourdine to participate in this horrific fraud and deceit.

25. Defendant First Citizen's Bank allowed Defendant Gourdine to bank with them and perpetrate the fraud by allowing her to cash the check.

26. Plaintiff's attorney also conducted research on Defendants Hearst Communications and Publisher's Clearing House and was stunned to find many government entities have sued these Defendants for defrauding the elderly.

27. Defendants Heart Communications, Good Housekeeping and Publisher's Clearing House have created this artificial and contrived 'advertising frenzy' in our society, reaching a point that normally rational and hard-working people believe they have a reasonable opportunity to win a life-changing monetary award, when nothing could be further from the truth. Defendants have been sued multiple times by many government agencies for their egregious and deplorable conduct.

28. This highly unchecked, negligent, and irresponsible 'advertising frenzy' has been used countless times as a springboard by fraudulent criminal organizations, and will be proven in the Court of Law.

29. Maybe some justice can be done by all of the Defendant's horrific behavior.

30. This complaint is a text-book case of criminal sociopaths, including Ms. Sharon Gourdine, preying on the Plaintiff, an elderly victim in our society, and is the only recourse remaining to said Plaintiff, when all other amicable ways to resolve the issue were exhausted.

31. Plaintiff was left with no alternative but to file this action in the wake of the most gross negligence, gross breach of the duty of care, intentional and negligent misrepresentations, and breaches of duty by Defendants.

32. <u>Plaintiff declares, under the penalty of perjury, that he has never sued any bank and has never sued Publisher's Clearing House or Good Housekeeping</u>.

33. Plaintiff's attorney is a consumer advocate who is filing this case to protect innocent people from having to experience a similar ordeal, both emotionally and financially.

34. Plaintiff was left with no alternative but to file this action in the wake of this overt and repeated acts of willful and malicious actions by Defendants.

35. Since time is of the essence, Plaintiff requests an expedited trial in 2022.

36. Plaintiff will send interrogatories start in July 2021 and depositions in August 2021 of all employees of all Defendants.

37. Plaintiff will file a Pre-Judgment Writ of Attachment on all of Defendants's personal and corporate assets and believes he has been damaged by no less than the jurisdictional minimum in actual and punitive damages and will spend the next 5 years outlying the case against the Defendants. They need to be held accountable, and severely sanctioned for their contemptible mistreatment of a Plaintiff who was a loyal ,valued, and indeed profitable customer who was then betrayed   due to Defendants's carelessness, gross incompetence, willful negligence, evasive interaction with plaintiff and plaintiff attorney, and self-dealing.

38. Plaintiff again requests the Court to expedite discovery and set a trial date in the most expeditious manner if possible.

## COUNT 1 – <u>**FRAUD AND DECEIT**</u>

**39.** Plaintiff repeats and realleges each and every allegation contained in paragraphs above as if fully set forth herein.

40. The tort of deceit or fraud requires: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) induce reliance; (d) justifiable reliance; and (e) resulting damage."

41. Plaintiff believes he can prove that First Citizens Bank is quite aware of on-going fraud as evidenced by their websites that even list the various scams for the Court at: https://www.firstcitizens.com/personal/insights/security/scam-calls.

42. Defendant First Citizens Bank knew that fraud was ripe and growing by leaps and bounds and yet did nothing and cashed the check of this pitiful and disgraceful scam artist Sharon Gourdine and gave her $7,500 cash from a hard-working Christian man. Ms. Gourdine would later post pictures of her drunken self laughing, partying, and drinking '40's on Instagram.

43. It's stunning the government knows where this scammer lives and is unable to arrest her presently.

44. So Defendant First Citizens Bank is essentially banking with scam-artists and is fully culpable in every way.

45. Plaintiff's attorney also conducted research on Defendants Hearst Communications and Publisher's Clearing House and was stunned to find many government entities have sued these Defendants for defrauding the elderly.

46. Defendants Heart Communications, Good Housekeeping and Publisher's Clearing House have created this artificial and contrived 'advertising frenzy' in our society, reaching a point that normally rational and hard-working people believe they have a reasonable opportunity to win a life-changing monetary award, when nothing could be further from the truth.. Defendants have been sued multiple times by many government agencies for their egregious and deplorable conduct.

47. This highly unchecked, negligent, and irresponsible 'advertising frenzy' has been used countless times as a springboard by fraudulent criminal organizations, and will be proven in the Court of Law.

48. Here the Defendants, collectively, made a false representation to Plaintiff, with the explicit knowledge of the falsity; that induced reliance of the Plaintiff and it was thoroughly justified resulting in countless damages against the Plaintiff, his career, his emotional toll (his family), his stewardship, his physical, his mental well-being, and income.

49. Plaintiff is a champion of other Plaintiffs and consumers, and has vigorously litigated for their rights and will vigorously, passionately, and relentlessly fight against the unacceptable and deplorable conduct, actions, and practices performed by said Defendants.

50. Furthermore, Defendants either negligently erred or intentionally and willfully defrauded Plaintiff.

51. Plaintiff is informed, and believes and, based thereon alleges, that at the time Defendants made the above promises, inducements, and representations to Plaintiff to induce Plaintiff to enter into the Written Agreement, that Defendants were aware that said promises, inducements, and representations were false, in that Defendants did not intend to fulfill the promises, inducements and representations to protect Plaintiff from these vicious, predatory schemes and false offers to bilk enormous sums of money from elderly and innocent people.

52. Plaintiff is further informed and believes and, based thereon alleges, that such promises, inducements and representations by Defendants Plaintiffre made with the intent to induce Plaintiff to enter into the Written Agreement and to render performance thereunder.

53. In strict and absolute reliance upon such false promises, inducements, and representations by Defendants, Plaintiff was defrauded out of $7,500, causing severe emotional distress to an elderly man of 91 who has helped his community and faith-based organizations and ministries most of his adult life.

54. At the time Plaintiff took such actions, he was ignorant of the falsity of Defendants's promises, inducements and representations and, in the exercise of reasonable diligence, could not have discovered its intentions: the financial straits due to the failure of their

performance; <u>and the outright deceit by all Defendants.</u> This conduct warrants punitive damages by this Court and by the jury and this conduct 'pierces the corporate veil' so the Defendants are not able to stand behind their company, but rather are personally liable for this fraud and deceit.

55. The Defendants have collectively and essentially 'raped' the Plaintiff of the bread off his table. They must be held personally and corporately liable. Plaintiff is confident the Court and the jury of the general public will understand this complaint and rule in his favor.

56. Had Plaintiff known the truth, and known of Defendants's intentions, he would never have been defrauded.

57. Since time is of the essence, Plaintiff has endured severe financial injury.. Damages to be determined by a fair jury of peers in the LA Superior Court. Plaintiff requests an expedited trial in 2021/2022.

58. As a direct and proximate result of the foregoing material breaches, Plaintiff has been damaged in an aggregate amount to be determined at trial, in far excess of the jurisdictional minimum.

# COUNT 2 – BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

59. Plaintiff repeats and realleges each and every allegation contained in paragraphs above as if fully set forth herein.

60. Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.

61. When Plaintiff, who is 91 years old, asked further questions, Plaintiff was asked by Defendant if he had also heard of Publisher's Clearing House? Per Defendant, this award was a joint sweepstakes, and Plaintiff was reassured by the recognition of the brand name.

62. Plaintiff was well aware of both Defendant's 'sweepstakes' that will target almost every household aggressively.

63. Plaintiff finally sent in a check for $7,500 on or about September 2020, believing said check would cover the processing costs for a $750,000 award.

64. At no point did Plaintiff ever believe he was being defrauded..

65. Plaintiff was clearly a victim of the toxic and hyper aggressive 'sweepstakes' culture brought on by Heart Publishing's Good Housekeeping and Publisher's Clearing House sweepstakes – often times targeting the elderly and those with limited or fixed incomes.

66. Both Good Housekeeping and Publisher's have been sued multiple times by government agencies for defrauding and bilking the elderly. When do we say, 'Enough is enough?'

67. Plaintiff was never aware of any fraudulent schemes going on with either Good Housekeeping or Publisher's Clearing House, again due to said Defendants willful negligence, lack of proper security measures and protocols, abundant lack of adequate warning to the community, and callous disregard for the most vulnerable members of our society,.

68. The $7,500.00 check was cashed by Defendant Sharon Gourdine who willfully and purposefully cashed the check to give the money to her criminal conspirators. She was obviously culpable, aiding and abetting these criminals, as she never returned the law firm's calls or emails.

69. Plaintiff believes he can prove that First Citizens Bank is quite aware of on-going fraud as evidenced by their websites that even list the various scams for the Court at: https://www.firstcitizens.com/personal/insights/security/scam-calls.

70. Defendant First Citizens Bank knew that fraud was ripe and growing by leaps and bounds and yet did nothing and cashed the check of this pitiful and disgraceful scam artist Sharon Gourdine and gave her $7,500 cash from a hard-working Christian man. Ms. Gourdine would later post pictures of her drunken self laughing, partying, and drinking '40's on Instagram. And we wonder why America is becoming a sewer system to these human cockroaches.

71. Plaintiff and his attorney immediately contacted Defendant Chase Bank to inform them, and to provide critical information and documentation of the scam. Plaintiff's attorney specifically told Chase Bank of the urgency to stop payment or to identify the banking institution for Defendant Gourdine, the information which would have assisted with the ongoing investigation.

72. Plaintiff's attorney conducted research on Defendants Hearst Communications and Publisher's Clearing House and was stunned to find many government entities have sued these Defendants for defrauding the elderly.

73. Defendants Heart Communications, Good Housekeeping and Publisher's Clearing House have created this artificial and contrived 'advertising frenzy' in our society, reaching a point that normally rational and hard-working people believe they have a reasonable opportunity to win a life-changing monetary award, when nothing could be further from the truth.. Defendants have been sued multiple times by many government agencies for their egregious and deplorable conduct.

74. This highly unchecked, negligent, and irresponsible 'advertising frenzy' has been used countless times as a springboard by fraudulent criminal organizations, and will be proven in the Court of Law.

75. This complaint is a text-book case of criminal sociopaths, including Ms. Sharon Gourdine, preying on the Plaintiff, an elderly victim in our society, and is the only recourse remaining to said Plaintiff, when all other amicable ways to resolve the issue were exhausted.

76. Plaintiff was left with no alternative but to file this action in the wake of the most gross negligence, gross breach of the duty of care, intentional and negligent misrepresentations, and breaches of duty by Defendants.

77. <u>Plaintiff alleges that Defendants actions went above and beyond being crafty/sneaky to outright fraud and deceit as the Court will see throughout this Complaint.</u>

78. Plaintiff requests the Court to expedite discovery and set a trial date in the most expeditious manner if possible.

79. Plaintiff has now expended over 26 hours of his valuable time and energy, including drafting this lawsuit.

80. As a direct and proximate result of the foregoing material breaches of the covenant of fair and good faith dealing, Plaintiff has been damaged in an aggregate amount to be determined at trial, in excess of the jurisdictional minimum of this Court.

## COUNT 3 – **WRONGFUL CONVERSION** (TO ALL DEFENDANTS)

81. Plaintiff repeats and realleges each and every allegation contained in paragraphs above as if fully set forth herein.

82. The elements of conversion are: 1) Intent to convert the tangible or intangible property of another to one's own possession and use, 2) The property in question is subsequently converted.

83. Defendants Good Housekeeping and Publisher's Clearing House helped create and foster this toxic environment against the elderly, and by mind-boggling negligence and callous disregard for the community, enabled and emboldened this network of swindlers to victimize the elderly, senile, and those suffering from dementia and Alzheimer's disease. Both Defendants Good Housekeeping and Publisher's Clearing House have been previously sued by the government for defrauding many elderly citizens. By their willful negligence, lack of proper security measures and protocols, abundant lack of adequate warning to the community, and callous disregard for the most vulnerable members of our society, hey created a vacuum that would allow any enterprising criminal to easily step in, and to misrepresent themselves as an agent of Good Housekeeping or Publisher's Clearing House, and to then take advantage of people's misplaced trust relating to 'winning large monetary awards from trusted companies. .

84. Defendants Good Housekeeping and Publisher's Clearing House have not taken the bold and aggressive, or even basic steps to combat these criminals for fear of ruining their brand image, and detracting from the popularity of their sweepstakes. This will be proven in Court and in front of a Honorable Judge and jury.

85. Plaintiff was clearly a victim of the toxic and hyper aggressive 'sweepstakes' culture brought on by Heart Publishing's Good Housekeeping and Publisher's Clearing House sweepstakes – often times targeting the elderly and those with limited or fixed incomes.

86. Plaintiff was never aware of any fraudulent schemes going on with either Good Housekeeping or Publisher's Clearing House, again due to said Defendants willful negligence, lack of proper security measures and protocols, abundant lack of adequate warning to the community, and callous disregard for the most vulnerable members of our society.

87. The $7,500.00 check was cashed by Defendant Sharon Gourdine who willfully and purposefully cashed the check at Defendant First Citizens Bank to give the money to her criminal conspirators. She was obviously culpable, aiding and abetting these criminals, as she never returned the law firm's calls or emails.

88. Defendant First Citizens Bank permitted and allowed Defendant Sharon Gourdine to participate in this horrific fraud and deceit.

89. Defendant First Citizen's Bank allowed Defendant Gourdine to bank with them and perpetrate the fraud by allowing her to cash the check.

90. Plaintiff's attorney also conducted research on Defendants Hearst Communications and Publisher's Clearing House and was stunned to find many government entities have sued these Defendants for defrauding the elderly.

91. All of the Defendants are culpable and directly responsible for the financial, and emotional harm that happened to Plaintiff.

92. There is an urgent need for something to be done about the bilking of the American people by those in corporate America who believe they are above the law, and by myriad hordes of clever thieves preying upon those who cannot defend themselves. This complaint seeks to address that need.

93. The money was unquestionably converted to Defendants enrichment, and who has still not refunded the Plaintiff the money it took.

94. As a direct and proximate result of the foregoing material breaches, Plaintiff has been damaged in an aggregate amount to be determined at trial, in far excess of the jurisdictional minimum.

## COUNT 5 – **INTENTIONAL MISREPRESENTATION** (TO ALL DEFENDANTS)

95. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

96. Plaintiff is very confident that any reasonable jury will find all of the causes of action present in the ongoing facts and will find in favor of the Plaintiff.

97. Plaintiff was clearly a victim of the toxic and hyper aggressive 'sweepstakes' culture brought on by Heart Publishing's Good Housekeeping and Publisher's Clearing House sweepstakes – often times targeting the elderly and those with limited or fixed incomes.

98. Plaintiff was never aware of any fraudulent schemes going on with either Good Housekeeping or Publisher's Clearing House, again due to said Defendants willful negligence, lack of proper security measures, lack of adequate warning to the community, and callous disregard for the most vulnerable members of our society,.

99. The $7,500.00 check was cashed by Defendant Sharon Gourdine who willfully and purposefully cashed the check to give the money to her criminal conspirators. She was obviously culpable, aiding and abetting these criminals, as she never returned the law firm's calls or emails.

100. Plaintiff and his attorney immediately contacted his Bank to inform them, and to provide critical information and documentation of the scam.

101. The bottom line is Defendant First Citizen's Bank should never have cashed the check and should have had better procedures in place for a check this large - $7,500.

102. Defendant First Citzens Bank had plenty of prior knowledge as they wrote a seminal warning about this type of fraud and their very own website.

103. Plaintiff's attorney conducted research  on Defendants Hearst Communications and Publisher's Clearing House and was stunned to find many government entities have sued these Defendants for defrauding the elderly.

104. Defendants Heart Communications, Good Housekeeping and Publisher's Clearing House have created this artificial and contrived 'advertising frenzy' in our society, reaching a point that normally rational and hard-working people believe they have a reasonable opportunity to win a life-changing monetary award, when nothing could be further from the truth.. Defendants have  been sued multiple times by many government agencies for their egregious and deplorable conduct.

105. This highly unchecked, negligent, and irresponsible 'advertising frenzy' has been used countless times as a springboard by fraudulent criminal organizations, and will be proven in the Court of Law.

106. Maybe some justice can be gained from exposing  all of the Defendant's horrific behavior.

107. This complaint is a text-book case of criminal sociopaths, including Ms. Sharon Gourdine, preying on the Plaintiff, an elderly victim in our society, and is the only recourse remaining to said Plaintiff, when all other amicable ways to resolve the issue were exhausted.

108.     Plaintiff was left with no alternative but to file this action in the wake of the most gross negligence, gross breach of the duty of care, intentional and negligent misrepresentations, and breaches of duty by Defendants.

109.     Plaintiff declares, under the penalty of perjury, that he has never sued any bank and has never sued Publisher's Clearing House or Good Housekeeping.

110.     Plaintiff's attorney is a consumer advocate who is filing this case to protect innocent people from having to experience a similar ordeal, both emotionally and financially.

111.     Plaintiff was left with no alternative but to file this action in the wake of this overt and repeated acts of willful and malicious actions by Defendants.

112.     Since time is of the essence, Plaintiff requests an expedited trial in 2021-2022.

113.     Plaintiff will send interrogatories start in July 2021 and depositions in August 2021 of all employees of all Defendants.

## COUNT 6 – **NEGLIGENT MISREPRESENTATION**
## (TO ALL DEFENDANTS)

114.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

*115.*     Court cases in California show companies can be vicariously liable for other or third-party action.

*116.*     Clearly, Defendants were aware of the fraudulent criminal enterprises utilizing their company brand names for dishonest gain, and did almost nothing except post missives on their websites which is clearly ***not enough.***

117.     On or about November 2020 , Plaintiff received an official letter from the Scammers  clearly stating that said Plaintiff won the Good Housekeeping Sweepstakes.

118.      They then began to call Plaintiff multiple  times a day stating they needed Plaintiff to send a check immediately to cover the processing fees for the stated winnings.

119.     When Plaintiff, who is 91 years old, asked further questions, he was queried by said scammer if he was aware of Publisher's Clearing House Sweepstakes? Plaintiff was aware of said organization, and his fears or concerns were relieved by his recognition of the company.

120.     Plaintiff was well aware of both Defendant's 'sweepstakes' unaware that in fact he was being duped by a criminal enterprise that viciously, aggressively, and actively targets the elderly in every community in America.

121.     Plaintiff finally sent in a check for $7,500 on or about September 2020, believing said check would cover the processing costs for a $750,000 award.

122.     At no point did Plaintiff ever believe he was being defrauded.

123.     Plaintiff was clearly a victim of the toxic and hyper aggressive 'sweepstakes' culture brought on by Heart Publishing's Good Housekeeping and Publisher's Clearing House sweepstakes – often times targeting the elderly and those with limited or fixed incomes.

124.     Plaintiff was never aware of any fraudulent schemes going on with either Good Housekeeping or Publisher's Clearing House, again due to said Defendants willful negligence, lack of proper security measures and protocols, abundant lack of adequate warning to the community, and callous disregard for the most vulnerable members of our society,.

125.     The $7,500.00 check was cashed by Defendant Sharon Gourdine who willfully and purposefully cashed the check to give the money to her criminal conspirators. She was obviously culpable, aiding and abetting these criminals, as she never returned the law firm's calls or emails.

126.     Plaintiff believes he can prove that First Citizens Bank is quite aware of on-going fraud as evidenced by their websites that even list the various scams for the Court at: https://www.firstcitizens.com/personal/insights/security/scam-calls.

127.     Defendant First Citizens Bank knew that fraud was ripe and growing by leaps and bounds and yet did nothing and cashed the check of this pitiful and disgraceful scam

artist Sharon Gourdine and gave her $7,500 cash from a hard-working Christian man. Ms. Gourdine would later post pictures of her drunken self laughing, partying, and drinking '40's on Instagram.

128.     Because of the negligent inaction on the part of First Citizen's Bank, the next 5-6 weeks became a stress-inducing and emotionally trying ordeal for an elderly man in his 90's.

129.     Plaintiff's attorney conducted research on Defendants Hearst Communications and Publisher's Clearing House and was stunned to find many government entities have sued these Defendants for defrauding the elderly.

130.     Defendants Heart Communications, Good Housekeeping and Publisher's Clearing House have created this artificial and contrived 'advertising frenzy' in our society, reaching a point that normally rational and hard-working people believe they have a reasonable opportunity to win a life-changing monetary award, when nothing could be further from the truth.. Defendants have been sued multiple times by many government agencies for their egregious and deplorable conduct.

131.      This highly unchecked, negligent, and irresponsible 'advertising frenzy' has been used countless times as a springboard by fraudulent criminal organizations, and will be proven in the Court of Law.

132.     Plaintiffs request the Court to expedite discovery and set a trial date in the most expeditious manner if possible.

## COUNT 7 – PROMISSORY FRAUD
### (TO ALL DEFENDANTS)

133.     Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

**134.**     The fraudulent inducements and false representations by Defendants to Plaintiff described with particularity in this entire Complaint communicated to Plaintiff both orally and written as set forth therein. The promises contained in the agreement

communicated to Plaintiff by Defendants as by and through other individuals affiliated with them orally and in writing. Both said the Defendants would work diligently to perform their duties. It's up to the jury to decide this ultimate question.

135.     Defendants Good Housekeeping and Publisher's Clearing House have created this toxic environment of abuse against the elderly, and through their callous inaction, willful disregard for their community in the name of profit, and lack of proper notification and security protocols, have enabled criminal organizations to bilk and steal from  the elderly, senile, and those suffering from dementia and Alzheimer's disease. Both Defendants Good Housekeeping and Publisher's Clearing House have been previously sued by the government for defrauding many elderly citizens. By their willful negligence, lack of proper security measures and protocols, abundant lack of adequate warning to the community, and callous disregard for the most vulnerable members of our society, have  created a vacuum that would allow any enterprising criminal to easily step in, and to misrepresent themselves as an agent of Good Housekeeping or Publisher's Clearing House, and to then take advantage of people's misplaced trust relating to 'winning large monetary awards from trusted companies. .

136.     Defendants Good Housekeeping and Publisher's Clearing House have not taken the bold and aggressive, or even basic steps to combat these criminals for fear of ruining their brand image, and detracting from the popularity of their sweepstakes. This will be proven in Court and in front of a Honorable Judge and jury.

137.     Plaintiff was clearly a victim of the toxic and hyper aggressive 'sweepstakes' culture brought on by Heart Publishing's Good Housekeeping and Publisher's Clearing

House sweepstakes – often times targeting the elderly and those with limited or fixed incomes.

138.     Plaintiff was never aware of any fraudulent schemes going on with either Good Housekeeping or Publisher's Clearing House, again due to said Defendants willful negligence, lack of proper security measures and protocols, abundant lack of adequate warning to the community, and callous disregard for the most vulnerable members of our society.

139.     The $7,500.00 check was cashed by Defendant Sharon Gourdine who willfully and purposefully cashed the check at Defendant First Citizens Bank to give the money to her criminal conspirators. She was obviously culpable, aiding and abetting these criminals, as she never returned the law firm's calls or emails.

140.     Defendant First Citizens Bank permitted and allowed Defendant Sharon Gourdine to participate in this horrific fraud and deceit.

141.     Defendant First Citizen's Bank allowed Defendant Gourdine to bank with them and perpetrate the fraud by allowing her to cash the check.

142.     Plaintiff's attorney also conducted research on Defendants Hearst Communications and Publisher's Clearing House and was stunned to find many government entities have sued these Defendants for defrauding the elderly.

143.     Plaintiff is informed, and believes and, based thereon alleges, that at the time Defendants made the above promises, inducements, and representations to Plaintiff to induce Plaintiff to send a check. This is the character and modus operandi of the Defendants and who they are.

144.     Plaintiff asks the Court to impose the strictest of puntive damages.

**145.**     Plaintiff is further informed and believes and, based thereon alleges, that such promises, inducements and representations by Defendants Plaintiffre made with the intent to induce Plaintiff to enter into the Written Agreement and to render performance thereunder.

**146.**     In strict and absolute reliance upon such false promises, inducements, and representations by Defendants, Plaintiff came to Defendants's facility.

**147.**     As a direct and proximate result of the above-described acts of Defendants, Plaintiff has been damaged in an amount to be determined at trial, in excess of the jurisdictional minimum of this Court.

**148.**     Defendants's conduct was (a) contemptible conduct which was carried on with a willful and conscious disregard for the rights of the Plaintiff, his career, and for the general public; (b) conduct that subjected Plaintiff to unjust hardship in conscious disregard of its rights; and (c) intentional misrepresentation, deceit or concealment of material facts known to Defendants with the intention of thereby depriving Plaintiff of his person and legal rights and otherwise causing injury. Said conduct constitutes malice, oppression, and fraud within the meaning of the Civil Code. Therefore, Plaintiff is entitled to recover exemplary and punitive damages against Defendants, in addition to actual damages, for the sake of example and by way of punishing Defendants extremely valuable time wasted.

# COUNT 8 – BREACH OF IMPLIED CONTRACT

**149.**     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

**150.**     Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.

151.     When Plaintiff, who is 91 years old, asked further questions, they then told Plaintiff had he also heard of Publisher's Clearing House? It was a joint sweepstakes.

152.     Plaintiff was well aware of both Defendant's 'sweepstakes' that will relentlessly pound on every household aggressively.

153.     Plaintiff finally sent in a check for $7,500 on or about September 2020, believing said check would cover the processing costs for a $750,000 award.

154.     Plaintiff believes he can prove that First Citizens Bank is quite aware of on-going fraud as evidenced by their websites that even list the various scams for the Court at: https://www.firstcitizens.com/personal/insights/security/scam-calls.

155.     Defendant First Citizens Bank knew that fraud was ripe and growing by leaps and bounds and yet did nothing and cashed the check of this pitiful and disgraceful scam artist Sharon Gourdine and gave her $7,500 cash from a hard-working Christian man.

156.     At no point did Plaintiff ever believe he was being defrauded.  Plaintiff was clearly a victim of the toxic and hyper aggressive 'sweepstakes' culture brought on by Heart Publishing's Good Housekeeping and Publisher's Clearing House sweepstakes – often times targeting the elderly and those with limited or fixed incomes.

157.     Both Good Housekeeping and Publisher's have been sued multiple times by government agencies for scamming the elderly. When do we say, 'Enough is enough?'

158.     Plaintiff was never aware of any fraudulent schemes going on with either Good Housekeeping or Publisher's Clearing House, again due to said Defendants willful negligence, lack of proper security measures and protocols, abundant lack of adequate

warning to the community, and callous disregard for the most vulnerable members of our society,.

159.     The $7,500.00 check was cashed by Defendant Sharon Gourdine who willfully and purposefully cashed the check to give the money to her criminal conspirators. She was obviously culpable, aiding and abetting these criminals, as she never returned the law firm's calls or emails.

160.     Plaintiff and his attorney immediately contacted Defendant Chase Bank to inform them, and to provide critical information and documentation of the scam.  Plaintiff's attorney specifically told Chase Bank of the urgency to stop payment or   to identify the banking institution for Defendant Gourdine, the information which would have assisted with the ongoing investigation.

161.     Because of the negligent inaction on the part of First Citizen's Bank, the next 5-6 weeks became a stress-inducing and emotionally trying ordeal for an elderly man in his 90's.

162.     Plaintiff's attorney conducted research on Defendants Hearst Communications and Publisher's Clearing House and was stunned to find many government entities have sued these Defendants for defrauding the elderly.

163.     Defendants Heart Communications, Good Housekeeping and Publisher's Clearing House have created this artificial and contrived 'advertising frenzy' in our society, reaching a point that normally rational and hard-working people believe they have a reasonable opportunity to win a life-changing monetary award, when nothing could be further from the truth.. Defendants have  been sued multiple times by many government agencies for their egregious and deplorable conduct.

164.     This highly unchecked, negligent, and irresponsible 'advertising frenzy' has been used countless times as a springboard by fraudulent criminal organizations, and will be proven in the Court of Law.

165.     Maybe some justice can be done by all of the Defendant's horrific behavior.

166.     This complaint is a text-book case of criminal sociopaths, including Ms. Sharon Gourdine, preying on the Plaintiff, an elderly victim in our society, and is the only recourse remaining to said Plaintiff, when all other amicable ways to resolve the issue were exhausted.

**167.**     Plaintiff was left with no alternative but to file this action in the wake of the most gross negligence, gross breach of the duty of care, intentional and negligent misrepresentations, and breaches of duty by Defendants.

## COUNT 10 – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (TO ALL DEFENDANTS)

*168.*     Plaintiff repeats and realleges each and every allegation contained in paragraphs above as if fully set forth herein.

169.     A cause of action for negligent infliction of emotional distress consists of: (1) a duty of care owed by the Defendants to the Plaintiff, (2) breach of that duty by the Defendants resulting in severe emotional suffering and (3) actual and proximate causation of severe emotional distress.

170.     Plaintiff was clearly a victim of the toxic and hyper aggressive 'sweepstakes' culture brought on by Heart Publishing's Good Housekeeping and Publisher's Clearing

House sweepstakes – often times targeting the elderly and those with limited or fixed incomes.

171.     Plaintiff was never aware of any fraudulent schemes going on with either Good Housekeeping or Publisher's Clearing House, again due to said Defendants willful negligence, lack of proper security measures and protocols, abundant lack of adequate warning to the community, and callous disregard for the most vulnerable members of our society.

172.     The $7,500.00 check was cashed by Defendant Sharon Gourdine who willfully and purposefully cashed the check at Defendant First Citizens Bank to give the money to her criminal conspirators. She was obviously culpable, aiding and abetting these criminals, as she never returned the law firm's calls or emails.

173.     Defendant First Citizens Bank permitted and allowed Defendant Sharon Gourdine to participate in this horrific fraud and deceit.

174.     Defendant First Citizen's Bank allowed Defendant Gourdine to bank with them and perpetrate the fraud by allowing her to cash the check.

175.     Plaintiff's attorney also conducted research on Defendants Hearst Communications and Publisher's Clearing House and was stunned to find many government entities have sued these Defendants for defrauding the elderly.

176.     Plaintiffs request the Court to expedite discovery and set a trial date in the most expeditious manner if possible

177.     Plaintiff also intends to file a Motion to Allow Public Cameras in the Courtroom to prevent this type of behavior from happening again to other worthy Plaintiffs.

178.     Should Plaintiff prevail, he will garnish the wages of Defendants.

Should Defendants declare bankruptcy, Plaintiff will file an Adverse Proceeding with the U.S. Bankruptcy Court blocking any bankruptcy from going through.

# COUNT 11 – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## (TO ALL DEFENDANTS)

*179.*     Plaintiff repeats and realleges each and every allegation contained in paragraphs as if fully set forth herein.

180.     The tort of intentional infliction of emotional distress has fPlaintiff's elements: (1) the Defendants must act intentionally or recklessly; (2) the Defendants's conduct must be extreme and outrageous; and (3) the conduct must be the cause (4) of severe emotional distress.

181.     On or about November 2020 , Plaintiff received an official letter from the Scammers  clearly stating that said Plaintiff won the Good Housekeeping Sweepstakes.

182.     Plaintiff finally sent in a check for $7,500 on or about September 2020, believing said check would cover the processing costs for a $750,000 award.

183.     On or about November 2019, Plaintiff received a letter from the Scammers saying Plaintiff won the Good Housekeeping Sweepstakes.

184.     They then began to call Plaintiff multiple  times a day stating they needed Plaintiff to send a check immediately to cover the processing fees for the stated winnings.

185.     When Plaintiff, who is 91 years old, asked further questions, he was queried by said scammer if he was aware of Publisher's Clearing House Sweepstakes? Plaintiff was aware of said organization, and his fears or concerns were relieved by the statement.

186.     Plaintiff was well aware of both Defendant's 'sweepstakes' unaware that in fact he was being duped by a criminal enterprise that viciously, aggressively, and actively targets the elderly in every community in America.

187.     Plaintiff finally sent in a check for $7,500 on or about September 2020, believing said check would cover the processing costs for a $750,000 award. At no point did Plaintiff ever believe he was being defrauded..

188.     Plaintiff was clearly a victim of the toxic and hyper aggressive 'sweepstakes' culture brought on by Heart Publishing's Good Housekeeping and Publisher's Clearing House sweepstakes – often times targeting the elderly and those with limited or fixed incomes.

189.     Plaintiff was never aware of any fraudulent schemes going on with either Good Housekeeping or Publisher's Clearing House, again due to said Defendants willful negligence, lack of proper security measures and protocols, abundant lack of adequate warning to the community, and callous disregard for the most vulnerable members of our society,.

190.     The $7,500.00 check was cashed by Defendant Sharon Gourdine who willfully and purposefully cashed the check to give the money to her criminal conspirators. She was obviously culpable, aiding and abetting these criminals, as she never returned the law firm's calls or emails.

191.     Because of the negligent inaction on the part of First Citizen's Bank, the next 5-6 weeks became a stress-inducing and emotionally trying ordeal for an elderly man in his 90's.

192.     Plaintiff's attorney conducted research on Defendants Hearst Communications and Publisher's Clearing House and was stunned to find many government entities have sued these Defendants for defrauding the elderly.

193.     Defendants Heart Communications, Good Housekeeping and Publisher's Clearing House have created this artificial and contrived 'advertising frenzy' in our society, reaching a point that normally rational and hard-working people believe they have a reasonable opportunity to win a life-changing monetary award, when nothing could be further from the truth.. Defendants have  been sued multiple times by many government agencies for their egregious and deplorable conduct.

194.     This highly unchecked, negligent, and irresponsible 'advertising frenzy' has been used countless times as a springboard by fraudulent criminal organizations, and will be proven in the Court of Law.

195.     Maybe some justice can be done by all of the Defendant's horrific behavior.

196.     This complaint is a text-book case of criminal sociopaths, including Ms. Sharon Gourdine, preying on the Plaintiff, an elderly victim in our society, and is the only recourse remaining to said Plaintiff, when all other amicable ways to resolve the issue were exhausted.

197.     As a direct and proximate result of the foregoing material, Plaintiff has been damaged in an aggregate amount to be determined at trial, in excess of the jurisdictional minimum of this Court.

# COUNT 12 – CIVIL CONSPIRACY
## (TO ALL DEFENDANTS)

198.     Plaintiff repeats and realleges each and every allegation contained in paragraphs above as if fully set forth herein.

199.     A conspiracy claim consists of (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of common purpose; and (3) actual legal damage.

200.     Plaintiff was clearly a victim of the toxic and hyper aggressive 'sweepstakes' culture brought on by Heart Publishing's Good Housekeeping and Publisher's Clearing House sweepstakes – often times targeting the elderly and those with limited or fixed incomes.

201.     Plaintiff was never aware of any fraudulent schemes going on with either Good Housekeeping or Publisher's Clearing House, again due to said Defendants willful negligence, lack of proper security measures and protocols, abundant lack of adequate warning to the community, and callous disregard for the most vulnerable members of our society.

202.     The $7,500.00 check was cashed by Defendant Sharon Gourdine who willfully and purposefully cashed the check at Defendant First Citizens Bank to give the money to her criminal conspirators. She was obviously culpable, aiding and abetting these criminals, as she never returned the law firm's calls or emails.

203.     Defendant First Citizens Bank permitted and allowed Defendant Sharon Gourdine to participate in this horrific fraud and deceit.

204.     Defendant First Citizen's Bank allowed Defendant Gourdine to bank with them and perpetrate the fraud by allowing her to cash the check.

205.     Plaintiff's attorney also conducted research on Defendants Hearst

Communications and Publisher's Clearing House and was stunned to find many

government entities have sued these Defendants for defrauding the elderly.

206.     Defendants Good Housekeeping and Publisher's Clearing House have created

this toxic environment of abuse against the elderly, and through their callous inaction,

willful disregard for their community in the name of profit, and lack of proper

notification and security protocols, have enabled criminal organizations to bilk and steal

from  the elderly, senile, and those suffering from dementia and Alzheimer's disease.

207.     Both Defendants Good Housekeeping and Publisher's Clearing House have been

previously sued by the government for defrauding many elderly citizens. By their willful

negligence, lack of proper security measures and protocols, abundant lack of adequate

warning to the community at large, and callous disregard for the most vulnerable

members of our society, they created a vacuum that would allow any enterprising

criminal to easily step in, and to misrepresent themselves as an agent of Good

Housekeeping or Publisher's Clearing House, and to then take advantage of people's

misplaced trust relating to 'winning large monetary awards from trusted companies

208.     Plaintiff believes he can prove that First Citizens Bank is quite aware of on-going

fraud as evidenced by their websites that even list the various scams for the Court at:

https://www.firstcitizens.com/personal/insights/security/scam-calls.

209.     Defendant First Citizens Bank knew that fraud was ripe and growing by leaps and

bounds and yet did nothing and cashed the check of this pitiful and disgraceful scam

artist Sharon Gourdine and gave her $7,500 cash from a hard-working Christian man. Ms.

Gourdine would later post pictures of her drunken self laughing, partying, and drinking

'40's on Instagram.

210.     Defendants Good Housekeeping and Publisher's Clearing House have not taken the bold and aggressive, or even basic steps to combat these criminals for fear of ruining their brand image, and detracting from the popularity of their sweepstakes. This will be proven in Court and in front of a Honorable Judge and jury.

## COUNT 13 – UNFAIR COMPETITION

211.     Plaintiff repeats and realleges each and every allegation contained in paragraphs above as if fully set forth herein.

212.     **California's "unfair competition" law** prohibits false advertising and other anti-competitive practices. Lawsuits can be brought by either consumers or by businesses that have been damaged by a competitor's unfair actions.

213.     Defendants Good Housekeeping and Publisher's Clearing House have created this toxic environment of abuse against the elderly, and through their callous inaction, willful disregard for their community in the name of profit, and lack of proper notification and security protocols, have enabled criminal organizations to bilk and steal from the elderly, senile, and those suffering from dementia and Alzheimer's disease.

214.     Both Defendants Good Housekeeping and Publisher's Clearing House have been previously sued by the government for defrauding many elderly citizens. By their willful negligence, lack of proper security measures and protocols, abundant lack of adequate warning to the community at large, and callous disregard for the most vulnerable members of our society, they created a vacuum that would allow any enterprising criminal to easily step in, and to misrepresent themselves as an agent of Good Housekeeping or Publisher's Clearing House, and to then take advantage of people's misplaced trust relating to 'winning large monetary awards from trusted companies.

215.     Plaintiff was clearly a victim of the toxic and hyper aggressive 'sweepstakes' culture brought on by Heart Publishing's Good Housekeeping and Publisher's Clearing

House sweepstakes – often times targeting the elderly and those with limited or fixed incomes.

216.    Plaintiff was never aware of any fraudulent schemes going on with either Good Housekeeping or Publisher's Clearing House, again due to said Defendants willful negligence, lack of proper security measures and protocols, abundant lack of adequate warning to the community, and callous disregard for the most vulnerable members of our society.

217.    The $7,500.00 check was cashed by Defendant Sharon Gourdine who willfully and purposefully cashed the check at Defendant First Citizens Bank to give the money to her criminal conspirators. She was obviously culpable, aiding and abetting these criminals, as she never returned the law firm's calls or emails.

218.    Defendant First Citizens Bank permitted and allowed Defendant Sharon Gourdine to participate in this horrific fraud and deceit.

219.    Defendant First Citizen's Bank allowed Defendant Gourdine to bank with them and perpetrate the fraud by allowing her to cash the check.

220.    Plaintiff's attorney also conducted research on Defendants Hearst Communications and Publisher's Clearing House and was stunned to find many government entities have sued these Defendants for defrauding the elderly.

221.    Defendants Good Housekeeping and Publisher's Clearing House have not taken the bold and aggressive, or even basic steps to combat these criminals for fear of ruining their brand image, and detracting from the popularity of their sweepstakes. This will be proven in Court and in front of a Honorable Judge and jury.

222.    The bare facts – taken alone – prove without doubt – that efendants violated the the Business and Professions code of California (§17200-17209) by advertising their services and duping Plaintiff for their own gain. SEE EXHIBIT A.

223.     **As a direct and proximate result of the foregoing material breaches of the signed, written contract, Plaintiffs have been damaged in an aggregate amount to be determined at trial, in excess of the jurisdictional minimum of this Court.**

# COUNT 16 – DECLARATORY RELIEF

224.     Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

225.     Plaintiff is informed and believes that Defendants denies the foregoing contentions.

226.     Plaintiff desires a judicial determination of their rights, duties, and remedies with respect to the foregoing matters. A judicial declaration is necessary and appropriate so the parties may proceed in accordance with their rights and obligations as determined by the Court.

227.     Plaintiff specifically requires a judicial declaration to compel First Citizens Bank to provide the identity of Defendant Sharon Gourdine, in order to proceed with the fraud investigation per the District Attorney of South Carolina, and to move forward with legal action against said banking institution.

# COUNT 17 – UNJUST ENRICHMENT

228.     Plaintiff repeats and realleges each and every allegation contained in paragraphs above as if fully set forth herein.

229.     As a result of Defendants's conduct alleged hereinabove, Defendants have been unjustly enriched at the expense of the Plaintiffs, in their respective interests as set forth above.

230.     Plaintiff was clearly a victim of the toxic and hyper aggressive 'sweepstakes' culture brought on by Heart Publishing's Good Housekeeping and Publisher's Clearing

House sweepstakes – often times targeting the elderly and those with limited or fixed incomes.

231.    Plaintiff was never aware of any fraudulent schemes going on with either Good Housekeeping or Publisher's Clearing House, again due to said Defendants willful negligence, lack of proper security measures and protocols, abundant lack of adequate warning to the community, and callous disregard for the most vulnerable members of our society.

232.    The $7,500.00 check was cashed by Defendant Sharon Gourdine who willfully and purposefully cashed the check at Defendant First Citizens Bank to give the money to her criminal conspirators. She was obviously culpable, aiding and abetting these criminals, as she never returned the law firm's calls or emails.

233.    Defendant First Citizens Bank permitted and allowed Defendant Sharon Gourdine to participate in this horrific fraud and deceit.

234.    Defendant First Citizen's Bank allowed Defendant Gourdine to bank with them and perpetrate the fraud by allowing her to cash the check.

235.    Plaintiff's attorney also conducted research on Defendants Hearst Communications and Publisher's Clearing House and was stunned to find many government entities have sued these Defendants for defrauding the elderly.

236.    Plaintiffs do not yet know the full amount by which Defendants, Defendants, and Does 1-10 have been so enriched.

# <u>COUNT 18 – PRELIMINARY AND PERMANENT INJUNCTION</u>

237.    Plaintiff repeats and realleges each and every allegation contained in paragraphs above as if fully set forth herein.

238.    <u>Due to Defendants's wrongful conduct, breaches of contracts, breaches of obligations, fraud and deceit, Plaintiff is informed and believes that Defendants will</u>

continue to duping the general public, including the elderly and must cease operations until the outcome of this case is determined. Unless such conduct is enjoined and restrained by an order of the Court, the general public will continue to suffer great and irreparable injury.

239.     Plaintiff lacks an adequate remedy at law for the injuries that would be suffered as a result of Defendants's breach of the confidentiality provision and because pecuniary damages are insufficient to wholly compensate Plaintiff for their injuries and because it is difficult to ascertain the amount of damages required to afford adequate relief.

240.     Plaintiff thus requests that this Court grant a preliminary injunction and permanent injunction enjoining that these Defendants, and each of them, and their agents, servants, and employees, and all such persons acting under, in concert with, or for Defendants from continued sweepstakes to the unsuspecting public.

# **DAMAGES**

WHEREFORE, Plaintiffs prays for judgment in their favor as follows:

1.  **For Compensatory damages according to proof but exceeding the jurisdictional limit of this Court**
2.  **For punitive and exemplary damages in an amount sufficient to punish and make an example of Defendants's wrongful conduct;**
3.  **For Demand for a Full and Unconditional Jury Trial by 2022;**
4.  **For declaration of the parties' rights and obligations as alleged hereinabove;**
5.  **For restitution of all amounts by which Defendants have been unjustly enriched as the result of their wrongful conduct;**
6.  **For the reasonable value of Plaintiff's services;**
7.  **For general damages which, to the extent possible, will put Plaintiff in the position it would have been in had Defendants not breached the contracts, all according to proof at trial, but in excess of the jurisdictional minimum of this**

Court.

8. For attorney expenses, fees, and costs of suit incurred herein, including all attorney's fees;

9. For interest at the maximum legal rate;

10. For prejudgment or other award at the maximum rate permitted by law;

DATED: June 14, 2021

BY_____

T.A. Chey, Esq

Attorney at Law

California State Bar No. 172096

1

2   **T.A. Chey, Esq  (CA State Bar License No. 172096)**
    **Attorney at Law (In Pro Per)**
3   **Arco Tower**
    **1055 West 7th Street**
4   **33rd Floor (Penthouse)**
    **Downtown LA, CA 90017**
5   **LawFirmofConsumerJustice@Activist.com; 424 388 0058**

6

7                      SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                          FOR THE COUNTY OF LOS ANGELES

9

10

11                                         )
                                           )   Case No:_____
12   **George Chey,**                      )
                                           )
13              **Plaintiff**              )
                                           )
14                                         )        **DECLARATION OF TA CHEY**
                                           )
15        **vs.**                          )
                                           )
16                                         )
                                           )
17   **FIRST CITIZENS BANK,**              )
                                           )
18   **PUBLISHER'S CLEARING HOUSE, LLC,**  )
                                           )
19   **GOOD HOUSEKEEPING, HEARST**         )
                                           )
20   **COMMUNICATIONS, SHARON**            )
                                           )
21   **GOURDINE, DOES 1-100**              )
                                           )
22              **DEFENDANTS**             )
                                           )
23                                         )
                                           )
24                                         )
                                           )
25                                         )
                                           )
26                                         )
                                           )
27                                         )
                                           )
28                                         )

)
)
)

## DECLARATION OF TA CHEY

I, T.A. CHEY, declare, under the penalty of perjury and under oath, as follows:

1.  I am a Harvard and USC alumnus and attorney.

2.  On or about November 2020 , Plaintiff received an official letter from the Scammers clearly stating that said Plaintiff won the Good Housekeeping Sweepstakes.

3.  They then began to call Plaintiff multiple  times a day stating they needed Plaintiff to send a check immediately to cover the processing fees for the stated winnings.

4.  When Plaintiff, who is 91 years old, asked further questions, he was queried by said scammer if he was aware of Publisher's Clearing House Sweepstakes? Plaintiff was aware of said organization, and his fears or concerns were relieved by his recognition of the company.

5.  Plaintiff was well aware of both Defendant's 'sweepstakes' unaware that in fact he was being duped by a criminal enterprise that viciously, aggressively, and actively targets the elderly in every community in America.

6.  Plaintiff finally sent in a check for $7,500 on or about September 2020, believing said check would cover the processing costs for a $750,000 award.

7.  At no point did Plaintiff ever believe he was being defrauded.

8.  Plaintiff was clearly a victim of the toxic and hyper aggressive 'sweepstakes' culture brought on by Heart Publishing's Good Housekeeping and Publisher's Clearing House sweepstakes – often times targeting the elderly and those with limited or fixed incomes.

9.  Plaintiff was never aware of any fraudulent schemes going on with either Good Housekeeping or Publisher's Clearing House, again due to said Defendants willful negligence, lack of proper security measures and protocols, abundant lack of adequate

warning to the community at large, and callous disregard for the most vulnerable members of our society,.

10. The $7,500.00 check was cashed by Defendant Sharon Gourdine who willfully and purposefully cashed the check to give the money to her criminal conspirators. She was obviously culpable, aiding and abetting these criminals, as she never returned the law firm's calls or emails.

11. The bottom line is Defendant First Citizen's Bank should never have cashed the check and should have had better procedures in place for a check this large - $7,500.

12. Defendant First Citzens Bank had plenty of prior knowledge as they wrote a seminal warning about this type of fraud and their very own website.

13. Plaintiff's attorney conducted research on Defendants Hearst Communications and Publisher's Clearing House and was stunned to find many government entities have sued these Defendants for defrauding the elderly.

14. Defendants Heart Communications, Good Housekeeping and Publisher's Clearing House have created this artificial and contrived 'advertising frenzy' in our society, reaching a point that normally rational and hard-working people believe they have a reasonable opportunity to win a life-changing monetary award, when nothing could be further from the truth.. Defendants have  been sued multiple times by many government agencies for their egregious and deplorable conduct.

15. Plaintiff was clearly a victim of the toxic and hyper aggressive 'sweepstakes' culture brought on by Heart Publishing's Good Housekeeping and Publisher's Clearing House sweepstakes – often times targeting the elderly and those with limited or fixed incomes.

16. Plaintiff was never aware of any fraudulent schemes going on with either Good Housekeeping or Publisher's Clearing House, again due to said Defendants willful negligence, lack of proper security measures and protocols, abundant lack of adequate warning to the community, and callous disregard for the most vulnerable members of our society.

17. The $7,500.00 check was cashed by Defendant Sharon Gourdine who willfully and purposefully cashed the check at Defendant First Citizens Bank to give the money to her criminal conspirators. She was obviously culpable, aiding and abetting these criminals, as she never returned the law firm's calls or emails.

18. Defendant First Citizens Bank permitted and allowed Defendant Sharon Gourdine to participate in this horrific fraud and deceit.

19. Defendant First Citizens Bank allowed Defendant Gourdine to bank with them and perpetrate the fraud by allowing her to cash the check.

20. Plaintiff's attorney also conducted research on Defendants Hearst Communications and Publishers Clearing House and was stunned to find many government entities have sued these Defendants for defrauding the elderly.

21. This highly unchecked, negligent, and irresponsible 'advertising frenzy' has been used countless times as a springboard by fraudulent criminal organizations, and will be proven in the Court of Law.

22. This complaint is a text-book case of criminal sociopaths, including Ms. Sharon Gourdine, preying on the Plaintiff, an elderly victim in our society, and is the only recourse remaining to said Plaintiff, when all other amicable ways to resolve the issue were exhausted.

23. Plaintiff was left with no alternative but to file this action in the wake of the most gross negligence, gross breach of the duty of care, intentional and negligent misrepresentations, and breaches of duty by Defendants.


I declare under penalty of perjury under the laws of this Honorable Court that the foregoing is true and correct.


Executed on June 14, 2021, at Los Angeles, CA

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

_____
T.A. Chey, Esq
Attorney at Law

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
T.A. Chey, Esq (CA State Bar License No. 172096)
1055 West 7th Street, LA 90017

TELEPHONE NO.: (424) 388-0058   FAX NO. (Optional):
ATTORNEY FOR (Name): George Chey

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF**
STREET ADDRESS: 111 N Hill St, Los Angeles, CA 90012
MAILING ADDRESS: 111 N Hill St, Los Angeles, CA 90012
CITY AND ZIP CODE: Los Angeles, CA
BRANCH NAME: Stanley Mosk Courthouse

CASE NAME:
GEORGE S. CHEY vs SHARON GOURDINE, et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [x] Unlimited (Amount demanded exceeds $25,000) [ ] Limited (Amount demanded is $25,000) | [ ] Counter [ ] Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | 21STCV22828 |
| | | JUDGE: DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

   **Auto Tort**
   [ ] Auto (22)
   [ ] Uninsured motorist (46)
   **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
   [ ] Asbestos (04)
   [ ] Product liability (24)
   [ ] Medical malpractice (45)
   [ ] Other PI/PD/WD (23)
   **Non-PI/PD/WD (Other) Tort**
   [ ] Business tort/unfair business practice (07)
   [ ] Civil rights (08)
   [ ] Defamation (13)
   [x] Fraud (16)
   [ ] Intellectual property (19)
   [ ] Professional negligence (25)
   [ ] Other non-PI/PD/WD tort (35)
   **Employment**
   [ ] Wrongful termination (36)
   [ ] Other employment (15)

   **Contract**
   [ ] Breach of contract/warranty (06)
   [ ] Rule 3.740 collections (09)
   [ ] Other collections (09)
   [ ] Insurance coverage (18)
   [ ] Other contract (37)
   **Real Property**
   [ ] Eminent domain/Inverse condemnation (14)
   [ ] Wrongful eviction (33)
   [ ] Other real property (26)
   **Unlawful Detainer**
   [ ] Commercial (31)
   [ ] Residential (32)
   [ ] Drugs (38)
   **Judicial Review**
   [ ] Asset forfeiture (05)
   [ ] Petition re: arbitration award (11)
   [ ] Writ of mandate (02)
   [ ] Other judicial review (39)

   **Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
   [ ] Antitrust/Trade regulation (03)
   [ ] Construction defect (10)
   [ ] Mass tort (40)
   [ ] Securities litigation (28)
   [ ] Environmental/Toxic tort (30)
   [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
   **Enforcement of Judgment**
   [ ] Enforcement of judgment (20)
   **Miscellaneous Civil Complaint**
   [ ] RICO (27)
   [x] Other complaint (not specified above) (42)
   **Miscellaneous Civil Petition**
   [ ] Partnership and corporate governance (21)
   [ ] Other petition (not specified above) (43)

2. This case [ ] is [x] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [x] monetary b. [ ] nonmonetary; declaratory or injunctive relief c. [x] punitive
4. Number of causes of action (specify):
5. This case [ ] is [x] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: June 14, 2021

Timothy A. Chey, Esq
(TYPE OR PRINT NAME)

Timothy Chey
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use   **CIVIL CASE COVER SHEET**   Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;

INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
Medical Malpractice– Physicians & Surgeons
Other Professional Health Care Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip and fall)
Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
Intentional Infliction of Emotional Distress
Negligent Infliction of Emotional Distress
Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
Negligent Breach of Contract/ Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
Collection Case–Seller Plaintiff
Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court Case Matter
Writ–Other Limited Court Case Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of County)
Confession of Judgment *(non-domestic relations)*
Sister State Judgment
Administrative Agency Award *(not unpaid taxes)*
Petition/Certification of Entry of Judgment on Unpaid Taxes
Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
Declaratory Relief Only
Injunctive Relief Only *(non-harassment)*
Mechanics Lien
Other Commercial Complaint Case *(non-tort/non-complex)*
Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late Claim
Other Civil Petition

For your protection and privacy, please press the Clear

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>**06/18/2021**<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: H. Flores-Hernandez Deputy |
| **NOTICE OF CASE ASSIGNMENT**<br>**UNLIMITED CIVIL CASE** | |
| Your case is assigned for all purposes to the judicial officer indicated below. | CASE NUMBER:<br>21STCV22828 |

### THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

| | ASSIGNED JUDGE | DEPT | ROOM | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|
| ✔ | Robert B. Broadbelt | 53 | | | | | |

Pr____ J. S_____
Chr_____ ____n

Given to the Plaintiff/Cross-Complainant/Attorney of Record

**Sherri R. Carter, Executive Officer / Clerk of Court**

on 06/18/2021
     (Date)

By H. Flores-Hernandez                    , Deputy Clerk

LACIV 190 (Rev 6/18)
LASC Approved 05/06

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007. They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date. All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference. These matters may be heard and resolved at this conference. At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules. Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status. If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

Superior Court of California
County of Los Angeles

**Receipt**     EFM-2021-3437648.1

**Date:**      6/18/21 2:41 PM
**Time:**      6/18/21 2:41 PM

CASE # 21STCV22828
GEORGE S. CHEY vs SHARON GOURDINE,

| | |
|---|---:|
| Unlimited Civil- Compt/UD/Pet filed >25k - GC70611,70602.5,70602.6 | 435.00 |
| Court Transaction Fee | 2.25 |
| **Case Total:** | 437.25 |

| | |
|---|---:|
| **Total Paid:** | 437.25 |

21LA03713627